# United States District Court

Eastern District of California

UNITED STATES OF AMERICA
V.
David Charles ZASTROW

## CRIMINAL COMPLAINT

CASE NUMBER: 5:10-mj-00024 JLT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Between the dates of on or about March 1, 2010, through on or about April 13, 2010, in the County of Kern, State and Eastern District of California and elsewhere, the defendant did,

use the mail or any facility or means of interstate or foreign commerce of the United States to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, and

travel in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person;

and travel in interstate commerce and use a facility of interstate or foreign commerce to unlawfully seize, confine, kidnap, abduct, or carry away and hold for an illicit or illegal purpose any person

in violation of Title 18, United States Code, Sections 2422(b), 2423(b) and 1201(a). I further state that I am a Special Agent with the U.S Department of Justice – Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT OF SENIOR SPECIAL AGENT SIRMAN

X Continued on the attached sheet and made a part hereof.

_____
Signature of Complainant
Special Agent Leif Sirman
FBI

Sworn to before me and subscribed in my presence

April 13, 2010            at            Bakersfield, California
*(Date)*                                *(City and State)*

Jennifer L. Thurston, Magistrate Judge         _____
Name & Title of Judicial Officer                        Signature of Judicial Officer

ATTACHMENT A

**AFFIDAVIT**

I, Leif Sirman, being duly sworn, do hereby depose and state:

1.  I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C. 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in title 18 U.S.C. 2516.

2.  I am and have been employed as a Special Agent with the Federal Bureau of Investigation (FBI) since August of 2004 and have been assigned to the Bakersfield Resident Agency since March of 2008.

3.  While employed as an FBI Special Agent, I have been responsible for investigating violations of federal criminal laws over which the FBI has jurisdiction. While employed by the FBI, I have investigated violations of federal criminal law under Title 18 of the United States Code including bank robbery, bank fraud, public corruption, mortgage fraud, civil rights, and sexual exploitation of minors.

4.  This Affidavit is submitted in support of a criminal complaint charging **David Charles Zastrow,** (hereinafter "Zastrow"), with knowingly and willfully violating Title 18, United States Code, Section 2423(b) (travel with intent to engage in illicit sexual conduct) and Title 18, United States Code, Section 2422(b) (Coercion and enticement), and Title 18, United States Code, Section 1201 (Kidnapping).

## BACKGROUND

5. The statements in this affidavit are based in part on information provided by Special Agents of the FBI, other law enforcement officers, and on my experience and background as a Special Agent of the FBI.

6. Zastrow and his son Christopher (Chris) Zastrow, resided in a two-bedroom apartment with C.A., biological mother to J.A. (now 14 years), T.A. (11 years), and B.A. (8 years), for about the previous two years, up to February 2010. C.A. has full custody of the above stated children. Their most recent address together was 146 Holmstead Road, apartment 2, Lehigh Acres, Florida. Zastrow was the apartment manager at the apartment complex where they resided.

7. In February 2010, C.A. moved with her children to California, and began living with Shawna at an apartment in Bakersfield, CA. (Shawna is the first wife of John A., who is J.A.'s biological father. C.A. is John A.'s second wife.) J.A. was upset about moving and leaving Zastrow and Chris. In protest to moving, just before they were to leave Florida for California, J.A. ran away, and was missing for two to three days. C.A. suggested to Florida authorities that they search the apartment complex, and Zastrow objected to the idea. J.A. was found living in an empty apartment in the complex where they resided, in Florida. Zastrow had the keys to all units, and it is believed that he was hiding her and providing her food and supplies.

8. On March 11, 2010, Zastrow checked in to the Motel 6, at 8223 East Brundage Road, Bakersfield, CA. The Motel 6 is

approximately 1.5 miles from J.A.'s residence, in Bakersfield, CA. Zastrow checked out of the Motel 6 on about March 14, 2010.

9. On March 15, 2010, Zastrow notarized an affidavit in Sacramento, CA, which was attached to custody documents seemingly intended to help J.A.'s biological father, John A., of Fort Collins, CO, receive full custody of J.A. and her two siblings. Zastrow visited his mother, in Sacramento, at that time.

10. On March 15, 2010, Zastrow checked in to the above referenced Motel 6 for one night. Zastrow subsequently paid, day by day, to remain at the Motel 6, on March 16 and 17, 2010. He paid cash at the Motel 6 for the nights that he stayed, from March 11-17, 2010. Motel 6 personnel verified Zastrow's name and viewed his picture identification, per their policy, and saw an older male with Zastrow at the motel. The identity of the older male is unknown. When Motel 6 personnel spoke with a man in Zastrow's room, the man said that he was Zastrow's son.

11. Zastrow wrote a license plate number for the motel, which was similar, but not identical, to his actual Florida plate number. He was captured on the Motel 6 surveillance camera footage. Zastrow paid for a Wireless Fidelity (Wi-Fi) internet connection each night that he stayed at the motel.

12. On March 15, 2010, C.A. was listening as J.A. spoke with Zastrow on the phone, and overheard Zastrow say "park" and "You can get away." C.A. took the phone and questioned Zastrow about the statements, but he resolved her concern by saying that he had been going to a park. There was a park near J.A.'s Bakersfield apartment. A neighbor child in the area said he/she

saw J.A. running toward the nearby park the afternoon that she went missing.

13. Prior to mid-March, 2010, Zastrow learned from John A. that Joshua A. (John A.'s son from his prior marriage to Shawna) was going to visit Bakersfield. Zastrow then arranged with John A. and Joshua to provide Joshua with a cell phone via an unknown male (UM1). Joshua resides in Fort Collins, CO.

14. On March 16, 2010, Joshua met UM1 at a Starbucks in Bakersfield, CA, where he received a cell phone attached to a hand-written note. Joshua then covertly provided the cell phone and note to J.A., unknown to J.A.'s mother. The note was later found in the apartment and provided to the KCSO. The note was addressed to J.A. and provided instructions on how to use the cell phone without detection, and contained the writing "Don't let C.A. scare you. I know you are, so try not to be. Don't let her scare you into not leaving." C.A. viewed a copy of the note and indicated that it appeared to be Zastrow's handwriting.

15. On March 17, 2010, J.A. was at home with S.A., as C.A. had left with B.A. to visit a nearby store. Without warning, J.A. ran out of the apartment, without shoes on or any visible items, clenching something in her hand. S.A. ran after J.A. but did not see her. S.A. called her mother, Shawna, to report the incident, who then called C.A.. They searched the surrounding area for J.A. but were unable to locate her, and contacted the KCSO soon thereafter.

16. J.A.'s family reported that prior to J.A.'s disappearance, Zastrow continually talked with J.A. on C.A.'s cell

1  phone after they moved to California, and Zastrow always answered
2  phone calls from C.A.'s cell phone, primarily as a means to
3  communicate with J.A.  After J.A.'s disappearance, Zastrow has not
4  answered or returned any calls from C.A.  To date, Zastrow has not
5  answered or returned calls from any known family members or law
   enforcement.
6
        17.  C.A. and J.A. have been close friends with Zastrow and
7
   Chris for about the last six years.  Interviews of C.A.'s other
8
   two children, along with S.A., and reports from neighbors in
9
   Lehigh Acres, indicated an inappropriate relationship existed
10
   between Zastrow and J.A.  Zastrow, Chris and J.A. went on a week-
11
   long vacation together in Florida.  J.A., Zastrow and Chris, all
12
   slept on mats on the floor in one bedroom of the two bedroom
13
   apartment by themselves, and J.A.'s mat was next to Zastrow.  This
14
   was discovered by a child protection investigator (shortly before
15
   C.A.'s move to California, after J.A. ran away while in Florida)
16
   who thought the situation was very inappropriate and confronted
17
   C.A. on the matter, but she was not concerned about it.
18
        18.  Zastrow has been referred to as a "nudist," and C.A.
19
   reported that J.A. was observed by her maternal grandmother with a
20
   towel that read "National Association of Nudists."  J.A.'s sister
21
   T.A. reported behavior and interactions with Zastrow that were
22
   inappropriate.  T.A. reported that Zastrow taught J.A. and T.A.
23
   about masturbation and how babies were made.  She said they were
24
   all nudists and spent time together talking and playing while
25
   nude.  T.A. said that sometimes J.A. acted like she was
26
   masturbating, in front of Zastrow.  Sometimes Zastrow and J.A.
27
28

would be nude and play a game where J.A. sat on Zastrow's lap and tried to "squish" his "wee-wee" with her "butt", and would exchange long kisses on the lips. J.A. and David took showers together and would "have fun." S.A. reported that J.A. is in love with Zastrow, as a boyfriend, and not as a father figure.

19. Zastrow left his employment as apartment manager in Florida without notice to his employer, within days of when C.A. and the children moved. After it was discovered that Zastrow had left without notice, his employer checked Zastrow's apartment which was emptied out, except for some broken furniture. Zastrow told some neighbors that he was going to California or Colorado to help the father of the children obtain custody of them.

20. It was reported by a neighbor that Zastrow would massage J.A. in the shower to try to relieve severe abdominal cramps. Another neighbor(s) was reported to have seen J.A. sitting on Zastrow's lap, kissing him on the mouth, wearing only thong underwear and a tee shirt.

21. In a hand written note dated 3/15/10, addressed "Dear Dave", and signed, "Yours forever, J.A.", the words "I skipped a period. I am scared cause I know I am not pregnant." were written.

22. KCSO obtained a Search Warrant on Zastrow's cell phone to obtain investigative information. To date, results show that the cell phone has not sent or received any calls since the date of J.A.'s disappearance, and appears to have been turned off since then. However, a new number was identified, days prior to J.A.'s disappearance, which may be the cell phone slipped to J.A.. Authorities have been following up on investigating that phone

number.

23. On April 6, 2010, KCSO spoke with John A. and his son Joshua, who reported that they had not spoken with J.A. or Zastrow or Chris since J.A.'s disappearance. Only when questioned by KCSO did John A. and Joshua give information about coordinating to get the cell phone covertly to J.A. They did not volunteer the information. Joshua said he never met Zastrow or Chris in person, but described the UM1 that gave him the cell phone for J.A. as clean shaven, early 20's, medium build, and about 5'11". Joshua did not volunteer information about the note until questioned, and then reported that he did not read it and did not know who wrote it.

24. On April 12, 2010, agents learned that Becky Hardin, ran away with David and Chris when she was 14 years old (today she is approximately 23 years old), and lived with them for four years. She was found and returned to her parents, but ran away a second time. Becky met Chris at a nudist resort for children. It was discovered that Becky and Chris were being video recorded as they were sexually active, and Becky believed that David was responsible for the recording. Becky discovered that David and Chris' computer had visited porn sites featuring girls under 16. David and Chris always monitored what Becky did and would get mad if she took a shower or went in the bathroom with the door shut. She was not allowed to use the phone, nor could she use the internet. David and Chris moved often, paid things with cash, and used PO Boxes, which was believed to have been done so they could not be traced easily. David and Chris always accessed the

internet, using places like coffee shops to do so, and David used a Cricket cell phone. After about four years Becky became concerned about living with David and Chris, and devised a ruse to return to her parents.

25. Zastrow is also known to have been associated with a group of persons believed to have been exchanging images of child pornography that was investigated in approximately 2001 by the Houston, Texas FBI office. At that time, Zastrow was believed to have been living in the Boise, Idaho area.

26. Zastrow has been known to use multiple email addresses, and routinely access the internet. A man who matched Zastrow's description was identified near Redding, CA on or about April 10, 2010. He was observed driving a white/light colored compact four door car. Investigation indicated that Zastrow may have obtained another cellular phone; and may have been was using a specific email address during the time frame of about April 1-13, 2010.

27. Investigation indicated that Zastrow had been staying/residing at or near the residence of his mother, Dale Lewis, at 4525 Manzanita Avenue, Carmichael, CA (a suburb of Sacramento, CA). A man matching Zastrow's description was seen in a white pickup truck at Lewis' apartment complex on about April 12, 2010.

28. Further investigation revealed that Lewis had indicated her son was staying at a nearby motel. On April 14, 2010, it was learned that a hotel near Lewis' apartment had a guest room booked under the name Dale Lewis, but not David Zastrow.

29. Based on the investigation conducted above, your

1  affiant believes there is probable cause to believe that Zastrow
2  has knowingly and willfully violated Title 18, United States Code,
3  Section 2423(b) (travel with intent to engage in illicit sexual
4  conduct); Title 18, United States Code, Section 2422(b) (Coercion
5  and enticement) and Title 18, United States Code, Section 1201
   (Kidnapping).
6
7
8
9                                            _____
                                             Leif Sirman
10                                           Special Agent
11
12  SWORN TO BEFORE ME, AND SUBSCRIBED
    IN MY PRESENCE THIS 13th DAY OF
13  April, 2010.
14  _____
    Jennifer L. Thurston
15  U.S. Magistrate Judge

-9-